# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAFEAL ARLANDOS JACKSON, Inmate #166961,<br><br>   Plaintiff,<br><br>vs.<br><br>JOE STEINHAUER, MEARL J. JUSTUS, T.J. COLLINS, THOMAS KNAPP, DETECTIVE TRICE, DETECTIVE SMITH, and INVESTIGATOR BROWN,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL NO. 04-924-DRH**<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

  Plaintiff, a former inmate in the St. Clair County Jail,[1] brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

  To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

---

[1] Plaintiff is currently in the custody of the Missouri Department of Corrections, housed in the Potosi Correctional Center in Mineral Point, Missouri.

**COUNT 1:**  Against Defendant Steinhauer for unconstitutional use of excessive force.

**COUNT 2:**  Against Defendants Steinhauer, Collins, Knapp, Trice, Smith, and Brown for performing illegal searches and confiscating personal items without compensation.

**COUNT 3:**  Against Defendant Justus for infliction of punishment without due process of law and for cruel and unusual conditions of confinement.

**COUNT 4:**  Against Defendants Collins and Justus for unconstitutional use of excessive force, infliction of punishment without due process of law, and cruel and unusual conditions of confinement.

## GENERAL CONSIDERATIONS

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, confinement of pretrial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.* at 539. *See also Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991). Although claims brought pursuant to section 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

## COUNT 1

Plaintiff states that while incarcerated in the St. Clair County Jail in August 2004, he was handcuffed with his hands in front of him and taken to the shower. After the shower, unspecified

deputies returned to escort Plaintiff back to his cell and ordered Plaintiff to put his hands behind his back for handcuffing. Plaintiff refused to submit to the handcuffs behind his back "because it had been a common practice to restrain his hands in front of him." Plaintiff states that Defendant Steinhauer then shot electricity into Plaintiff's side with a "taser" gun. Defendant Steinhauer then ordered the unnamed deputies to restrain Plaintiff's hands and legs and carry him to his cell. Plaintiff states that Defendant Steinhauer's actions were an unconstitutional use of excessive force.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Based on these legal standards and Plaintiff's allegations, Count 1 cannot be dismissed at this point in the litigation.

## COUNT 2

Plaintiff states that on October 28, 2004, Defendants Steinhauer, Collins, Knapp, Trice, Smith, and Brown removed from their all detainees housed in the maximum security segregation

unit in leg and hand restraints. Each of the detainees were separated within the jail and strip searched. The strip search of Plaintiff, undertaken by Joe Steinhauer and other deputies, was video taped. The inmates were kept in restraints in their separate locations for two hours, during which time Defendants Trice, Smith, and Brown searched the cells in the maximum security segregation unit. A number of Plaintiff's personal items were confiscated during the search, including pens, magazines, books, toiletries, food, eating utensils, and legal and personal papers, and, according to the Plaintiff, of the items taken "approximately 90% . . . was not contraband." Plaintiff states that he was never given any reason why his property was confiscated, why his cell was "left in shambles," why the strip search was video taped, and why his verbal and written complaints were not responded to.

Plaintiff argues that Defendants Collins and Knapp did not intervene to stop the searches, but condoned and encouraged them. Furthermore, Collins and Knapp did not direct that Plaintiff's property be returned to him and refused to compensate Plaintiff for the confiscated items. Plaintiff states that on November 19, 2004, Defendants Collins, Knapp, and Steinhauer ordered deputies to destroy the confiscated property of Plaintiff and the other detainees.

Plaintiff presents two separate claims under Count 2. First, that his cell was illegally searched and his property was improperly confiscated and second, that he was illegally strip searched.

### *Cell Search*

The Supreme Court has held that random "shakedown" searches of the cells of pretrial detainees, while the detainees are absent, are not unconstitutional. *See Block v. Rutherford*, 468 U.S. 576, 589-91 (1984). Plaintiff believes that he should be compensated in some way for his confiscated property. By Plaintiff's own admission some of the property taken from his cell was

contraband and the Court finds it difficult to see how the confiscation of contraband is not "reasonably related to a legitimate government interest." *See Bell,* 441 U.S. at 539. The Seventh Circuit has cautioned that it gives "a high degree of deference to the discretion of prison administration to 'adopt policies and practices to maintain the safety and security of this country's penitentiaries.'" *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (quoting *United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2001)).

However, based on Plaintiff's allegations, the Court cannot tell whether the confiscation of the non-contraband property was taken in an effort to punish without due process of law. *See Bell*, 441 U.S. 520. As such, the Court cannot dismiss this portion of the claim at this point in the litigation. Plaintiff states specifically that Defendants Collins and Knapp refused to compensate him for the lost property, and that Defendants Collins, Knapp, and Steinhauer were responsible for destroying the confiscated items. Accordingly, Plaintiff may proceed against these defendants on the confiscated property claim.

### *Strip Search*

Prisoners retain a limited expectation of privacy in their persons. *Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 1362 (1993). Body searches must therefore be reasonable. Deciding what is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Courts must consider the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*

Strip searches that are not related to legitimate security needs or are designed to harass may be found unconstitutional under the Fourth Amendment or the Eighth Amendment. *Seltzer-Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995) (prisoner's Fourth Amendment claim survived summary judgment

where prisoner alleged that guard conducted strip searches during which he commented about prisoner's penis and buttocks, rubbed his buttocks with a nightstick, and asked him whether it reminded him of something); *Burton v. Kuchel*, 865 F.Supp. 456 (N.D.Ill. 1994) (prisoner's Fourth Amendment claim survived summary judgment where prisoner alleged that he was strip searched every day for approximately one month; court held that a finding of harassment may be justified); *Blanks v. Smith*, 790 F.Supp. 192 (E.D.Wis. 1992) (allegations of daily strip and cell searches for two weeks stated an Eighth Amendment claim); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987). In the instant case, the strip search in question was part of a legitimate and constitutional search of Plaintiff's cell. Plaintiff alleges merely that he was given no reason for the strip search, he does not allege that the search was undertaken in order to punish him or in an effort to harass. As such, Plaintiff has not shown how the strip search was "punishment" under *Bell*. Accordingly, he has failed to state a claim based on these facts.

In sum, Plaintiff may proceed on Count 2 against Defendants Collins, Knapp, and Steinhauer on the confiscated property claim only. The other portions of the Count are **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 3

Plaintiff states that on November 3, 2004, Defendant Justus came to Plaintiff's cell and made a derogatory comment. Plaintiff responded with a string of expletives and comments regarding an apparent suicide attempt at the jail. A few minutes later, eight correctional officers and a dog approached Plaintiff's cell and put Plaintiff in hand and leg restraints. The correctional officers removed Plaintiff from the cell and placed him in a restraint chair, strapping him into the chair with restraints at his legs, wrists, waist, and shoulders. Plaintiff, still in the chair, was placed into the

jail's "quiet room," an small, empty room in the jail's suicide unit. Plaintiff was kept in the room, strapped to the chair for 25 hours. Plaintiff states was not allowed to use the toilet, to take a shower, or to obtain medical treatment. However, Plaintiff also states that several nurses, a psychologist, and a doctor examined him during the period of restraint and gave him pain medication. Because Plaintiff was not allowed to use the toilet, Plaintiff urinated and defecated on himself after eight hours, and was not allowed out of the chair to clean himself. After twelve hours, one of his wrists was released so that he could eat breakfast. Plaintiff states that Nurse Barbara Rodriguez (not a defendant), who gave Plaintiff the pain medication, told deputies that it was inhumane to keep Plaintiff strapped to the chair in that manner. Nurse Rodriguez was informed by the deputies and a supervisor that they had been ordered not to release Plaintiff for any reason until they received permission from Defendant Justus. Nurse Rodriguez returned later with a doctor who examined Plaintiff and suggested that his legs be released from the restraints for about fifteen minutes. This was allowed, and the doctor "worked his legs back and forth for approximately ten minutes." The restraints were then reapplied. After approximately 25 hours in the chair, Defendant Justus ordered Plaintiff released from the chair. When he returned to his cell, it had been searched and some personal property removed. Plaintiff states that Defendant Justus ordered and directed all of this treatment.

In *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), the Supreme Court held that a pretrial detainee may be subjected "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Legitimate governmental objectives are not limited to ensuring the detainee's presence

at trial; they also may include interests stemming from the government's need to effectively manage the detention facility, or to maintain security and order there. *Id.* at 540. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.*

However, *Bell* requires courts to consider whether pretrial detainees' conditions of confinement claims demonstrate that "punishment" took place, thus, courts have had to look somewhere for a definition of "punishment" in this sense. Several courts in this circuit have looked to the Eighth Amendment for that definition. *See e.g.Hines v. Sheahan*, 845 F. Supp. 1265, 1267 (N.D. Ill. 1994) (Grady, J.); *Antonelli v. Sheahan*, 863 F. Supp. 756, 759 (N.D. Ill. 1994) (Holderman, J.); *Chavis v. Fairman*, No. 92 C 7490, 1994 WL 55719, at *7 n.4 (N.D. Ill. Feb. 22, 1994) (Aspen, J.). Assuming plaintiff was a pretrial detainee, however, plaintiff cannot be punished at all. *See Lock v. Jenkins*, 641 F.2d 488, 491 n.7 (7th Cir. 1981) ("The due process clause, forbidding all punishment of pretrial detainees, is thus more inclusive in its protection than the Eighth Amendment, which would allow punishment as long as it is not cruel and unusual.")

Plaintiff's factual allegations are clearly sufficient to state a claim first, that Plaintiff was punished improperly without due process of law under *Bell* and second, that the conditions of his restraint potentially violate the Eighth Amendment. As such, Count 3 cannot be dismissed from the action at this point in the litigation.

## COUNT 4

Plaintiff states that on November 22, 2004, he was taken to the office of Defendant Collins by Defendant Steinhauer and two other unnamed deputies. Plaintiff demanded information about the personal property that had been confiscated during the searches described in the previous counts.

Plaintiff states that Defendant Collins refused to discuss the property. Plaintiff then admits that he responded angrily, using expletives and telling Defendant Collins that he would not talk about anything else. Plaintiff states that Defendant Collins then hit him in the back of the head with a walkie-talkie. Defendant Collins ordered the unnamed deputies to remove Plaintiff from his office and place him in the restraint chair (described in Count 3, above) for twenty-four hours. On the way out of the office, however, Plaintiff continued to shout expletives and threats at Defendant Collins, causing Defendant Collins to order the deputies to return Plaintiff to his office. Defendant Collins then took a "baseball-bat type stick" and hit Plaintiff with it on his shoulder. Plaintiff continued to yell expletives. Defendant Collins again hit Plaintiff with the stick, first on his left leg then on his left arm. As Plaintiff continued to call Defendant Collins names and shout expletives, Defendant Collins rammed the stick into Plaintiff rib cage. Defendant Collins then ordered Defendant Steinhauer and the other deputies to place Plaintiff in the restraint chair. On the way out of the office, Plaintiff states that Defendant Justus punched him several times in the face, head, and chest. Defendant Collins then ordered that Plaintiff be placed in the restraint chair for forty-eight hours.

Plaintiff was placed in the chair and again put in the "quiet room" where he remained, restrained, for thirty-two hours. His requests to be released so that he could use the toilet and shower were denied. However, he was given medical attention–several nurses examined him and administered pain medication. Plaintiff was not allowed to use the toilet and he urinated and defecated on himself and was not allowed to clean himself for fourteen hours. He was given one meal. After he was released from the restraint chair, he was given a mattress and was placed in a stripped suicide observation cell for twenty-four more hours, on the orders of Defendant Collins. Plaintiff brings this Count against Defendants Collins and Justus for use of excessive force and inhumane conditions of confinement, which Plaintiff alleges Defendants Collins and Justus ordered

and directed.

Based on the legal standards described in Count 1, Plaintiff has sufficiently stated a claim against Defendants Collins and Justus for unconstitutional use of excessive force. Based on the standards described in Count 3, Plaintiff has stated claims against Defendants Collins and Justus for infliction of punishment without due process of law, and for cruel and unusual conditions of confinement in violation of the Eighth Amendment.

### SUMMARY AND CONCLUSION

Plaintiff may proceed against Defendant Steinhauer on Count 1; Defendant Collins, Knapp, and Steinhauer on the confiscated property claims of Count 2; Defendant Justus on Count 3; and Defendants Collins and Justus on Count 4. Because the claims against Defendants Trice, Smith, and Brown have been dismissed from the action, they are also **DISMISSED** as defendants from the action.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for *Defendants Steinhauer, Collins, Knapp, and Justus*. The Clerk shall forward those forms, USM-285 forms submitted by the Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on *Defendants Steinhauer, Collins, Knapp, and Justus* in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of St. Clair County Jail who no longer can be found at the

work address provided by Plaintiff, the County shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from the County pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff  is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not

been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

### PENDING MOTION

Currently pending before the Court is Plaintiff's motion for ruling on his complaint and for the Court to order service upon defendants. The Court has now completed its threshold review and has ordered service upon the defendants who survived that review. As such, Plaintiff's motion (Doc. 12) is **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED:** August 18, 2006

/s/   David   RHerndon
**DISTRICT JUDGE**